UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Monty Jones,   Civil No. 23-2550 (DWF/ECW)

        Plaintiff,

v.   **MEMORANDUM OPINION AND ORDER**

Lincoln National Life Insurance Company
and Wells Fargo,

        Defendants.

# INTRODUCTION

This matter is before the Court on cross motions for summary judgment brought by Plaintiff Monty Jones (Doc. No. 39) and Defendants Lincoln National Life Insurance Company ("Lincoln") and Wells Fargo (Doc. No. 35). For the reasons set forth below, the Court denies Jones's motion and grants Defendants' motion.

# BACKGROUND

Wells Fargo hired Jones as a Program Analyst on March 14, 2023. (Doc. No. 43 (Administrative Record ("AR")) at 2.) Shortly after starting his position with Wells Fargo, Jones sought short-term disability ("STD") benefits under a plan sponsored by Wells Fargo and administered by Lincoln (the "STD Plan" or "Plan"). (*Id.* at 8, 512.)

## I. The STD Plan

Wells Fargo established the STD Plan "to provide a payment to regular and fixed term Employees should a disability occur during employment." (Doc. No. 41, Ex. B ("Plan") at 5.) The Plan provides employees with STD benefits if they are disabled and

"actively at work on the scheduled day before the onset of disability," among other technical requirements. (Doc. No. 41, Ex. C (Summary Plan Description ("SPD")) at 67.)[1] Under the Plan, a person is disabled if they "have a medically certified health condition that lasts longer than [seven consecutive calendar days] and prevents [the employee] from performing the essential duties of [their] job." (*Id.* at 63, 67.) A medically certified health condition is a disabling injury or illness that is (1) "documented by clinical evidence as provided and certified by an approved care provider," and (2) prevents the employee "from performing the essential functions, duties, and regular schedule of [their] position." (*Id.* at 68.)

The Plan provides that Wells Fargo has full discretionary authority to interpret the Plan: "The Plan Administrator shall have complete control of the administration of the Plan, with all discretionary authority and powers allowed by law to interpret the Plan and to carry out its duties and discharge its responsibilities under the Plan." (Plan § 6.1.) The Plan also grants Wells Fargo the right to delegate its powers to a third-party administrator. (*Id.* §§ 6.1-6.2.) A claims administrator appointed by Wells Fargo has "the same discretionary authority as the Plan Administrator." (*Id.* § 6.1(b).) Wells Fargo elected to delegate its claims administration duties and powers, and the accompanying discretionary authority, to Lincoln. (SPD at 63.)

---

[1]     The STD Plan explains that the Plan document and the Summary Plan Description together constitute the full STD Plan. (Plan at 5.) Accordingly, the Court cites to both throughout this Order when referring to the Plan.

2

## II.     Jones's Claim for STD Benefits

Jones's last day of work was April 21, 2023, and his claimed date of disability is April 22, 2023.  (AR at 2.)  In his claim, Jones explained that he suffers from anxiety, depression, atrial fibrillation, and sleep apnea.  (*Id.* at 8.)  He also reported that his mother had died recently.  (*Id.*)  After Jones submitted his claim, Lincoln requested all relevant records pertaining to Jones's claim and the contact information of his medical providers.  (*Id.* at 501-02.)  In response, Jones and his providers submitted the following: (1) visit notes from Jones's therapist, Nicole Terlouw, MSW, LICSW; (2) a Family and Medical Leave Act request ("FMLA form") and Treating Provider Statement signed by Terlouw on April 25, 2023; (3) notes from a telehealth visit with Beth Dougherty, APRN on April 14, 2023; and (4) notes from a telehealth visit with cardiologist Dr. Nazifa Sajady on April 19, 2023.

Terlouw provided notes from her visits with Jones on March 2, 2023, March 9, 2023, March 25, 2023, April 8, 2023, and April 22, 2023.  (*Id.* at 459-71.)  These notes show that Jones was dealing with anxiety and depression as early as March 2, 2023.  In the notes for each of these sessions, Terlouw noted that Jones reported being in a depressed mood.  (*Id.* at 460, 462, 464, 466, 468.)  He also reported feeling anxious and exhausted intermittently, but he reported improved sleep on April 8, 2023.  (*Id.* at 460, 462, 466.)  Terlouw also recorded objective mental status examination results in each of these visits:  all Jones's results demonstrated average or normal status.  (*Id.* at 460-69.)  On March 25, 2023, Jones mentioned at the end of his session that his mother had died and he was "not planning to go to the funeral because of drama and conflict within the

3

family." (*Id.* at 464.) On April 22, 2023, Jones again reported that he was in a depressed mood. (*Id.* at 468.) Further, he reported "having a bad two weeks," "problems at work," and "reaching a new level of irritability." (*Id.*) He again mentioned the impact of his mother's death. Terlouw wrote in her assessment narrative on April 22, 2023, that "[Jones's] symptoms seem to be worsening following the death of his mother." (*Id.* at 469.) Despite writing this, Terlouw made no additional changes to Jones's treatment plan, made no notes about any functional impairment Jones was experiencing, and made no mention of Jones requiring time off from work to cope with his conditions. (*See id.* at 459-71.)

In the separate FMLA form, Terlouw wrote that Jones has major depressive disorder and an unspecified anxiety disorder. She described Jones's depression as "recurrent and moderate in severity." (*Id.* at 456, 491.) In the accompanying Treating Provider Statement, Terlouw described Jones's mental health condition as: "Moderate impairment, on-going, with symptoms worsening over the past month, symptoms are recurrent; client has been in treatment with this clinician since 2/16/23." (*Id.* at 458.) The last question asked about recommended health restrictions, to which Terlouw answered: "Time-off per client's dates (4/22-5/23)." (*Id.*)

Jones's April 14, 2023, telehealth visit with Dougherty was a consult about Jones's sleep apnea. (*Id.* at 446-48.) In the visit, they agreed that they would conduct a home sleep study. (*Id.* at 446.)

Jones's April 19, 2023, telehealth visit with Dr. Sajady concerned his atrial fibrillation. (*Id.* at 422-33.) The visit primarily addressed palpitations Jones was

experiencing related to this condition.  (*Id.* at 424-25.)  Dr. Sajady did not express any concern about Jones's condition or report any worsening of his condition.  (*Id.*)  Dr. Sajady ordered an echocardiogram, basic metabolic panel, and a follow-up visit in six months.  (*Id.* at 425.)

**III.    Lincoln's Denial of Jones's Claim and Jones's Appeal**

On May 11, 2023, Lincoln informed Jones that it was reviewing his claim and that it had referred his claim to a Nurse Disability Consultant.  (*Id.* at 415.)  On May 16, 2023, the Nurse Disability Consultant completed her report, finding that there was a lack of clinical evidence to show that Jones was disabled.  (*Id.* at 412-13.)  Although there was evidence that Jones suffered from anxiety, depression, atrial fibrillation, and sleep apnea, there was no evidence that these conditions had worsened to cause sustained functional impairment.  Jones had previously performed his job duties while suffering from these conditions and had no issues.  (*Id.*)  To specifically address Jones's anxiety and depression, the Nurse Disability Consultant wrote:

> [T]here is evidence of treatment for the same dating back to at least 3/6/23 (> 6 weeks prior to [date of disability]), with which the [employee] was able to continue working with, no significant change in symptoms around [date of disability] documented, minimally abnormal mental status exam findings documented to corroborate severe symptoms or related functional deficits that would translate into global impairment . . . , [and] no apparent change in the recommended treatment plan.

(*Id.* at 413.)  After reviewing Jones's medical records and the Nurse Disability Consultant's report, Lincoln denied Jones's claim on May 18, 2023.  (*Id.* at 405-06.)  Lincoln explained that the medical records showed that there was no significant change in Jones's conditions around his reported date of disability.  (*Id.* at 406-07.)  While the

5

records showed he struggled with anxiety, depression, atrial fibrillation, and sleep apnea, he had no issue working with these conditions in the past. (*Id.*)

Jones appealed Lincoln's denial on May 23, 2023. (*Id.* at 95-97.) Lincoln encouraged Jones to submit additional medical evidence for consideration with his appeal, setting a document deadline of June 16, 2023. (*Id.* at 72.) On May 17, 2023, Health Partners submitted Jones's medical records related to atrial fibrillation and sleep apnea visits from 2010 through 2022. (*Id.* at 104, 115-402.) Terlouw submitted a Certification of Health Care Provider form on May 24, 2023, again requesting leave for Jones because of his depression and "complex grief." (*Id.* at 98-101.) She added no new information to the form and wrote that the nature of Jones's treatment was therapy. (*Id.* at 101.) Jones submitted additional records including home sleep study results from April 20, 2023, and notes from Karen Anderson, APRN, from a visit on May 8, 2023. (*Id.* at 61-64, 82-94.) The home sleep study tech did not record any new or worsening conditions in his notes. (*Id.* at 94.) Anderson noted that Jones had dealt with anxiety and depression since 2013 and that these conditions "continue[d] to wax and wane." (*Id.* at 61, 64.) Anderson also included Jones's recent PHQ-9[2] test results: a score of 16 on January 6, 2023; a score of 11 on March 2, 2023; and a score of 7 on May 3, 2023. (*Id.*

---

[2]   The PHQ-9 is a diagnostic tool used by health care professionals to recognize signs of depression. Pfizer, *Screener Overview*, Patient Health Questionnaire (PHQ) Screeners, https://www.phqscreeners.com/select-screener (last visited November 18, 2024). It is scored from zero to 27 and higher scores indicate more severe depression. Pfizer, *Instruction Manual*, Patient Health Questionnaire (PHQ) Screeners, https://www.phqscreeners.com/images/sites/g/files/g10016261/f/201412/instructions.pdf (last visited November 18, 2024).

6

at 62.) Anderson slightly altered Jones's medications in this visit but otherwise classified his depression as "mild" and did not include a recommendation of time-off from work in her treatment plan. (*Id.* at 64.)

On June 16, 2023, Lincoln informed Jones that it was proceeding with appellate review and that Lincoln had tried to contact him to confirm whether he would submit additional records but failed to reach him. (*Id.* at 54-55.) The Appeals Nurse Disability Consultant reviewed Jones's claim and issued his report on June 27, 2023. (*Id.* at 32-36.) The report discussed Jones's medical records and diagnoses in great detail. While Jones had shown he suffered from various conditions, the Appeals Nurse Disability Consultant found "no compelling evidence on any mental status exams, psychiatric exams, therapy session records or at any of his telemedicine visits to show support for any functional or cognitive deficits." (*Id.* at 51.) Similarly, there was no evidence that Jones's atrial fibrillation and sleep apnea were "functionally impairing." (*Id.*) The Appeals Nurse Disability Consultant emphasized when reviewing each medical record from around Jones's claimed date of disability that "[t]here was no discussion about restrictions, limitations and/or recommendations for time away from work." (*Id.* at 49-50.)

On June 28, 2023, Lincoln sent Jones another letter. It attached the Appeals Nurse Disability Consultant's report and emphasized: "This is NOT a final determination on your appeal. We encourage you to go over this report with your treating providers so you can work together on providing any additional information for your appeal." (*Id.* at 46 (emphasis omitted).) Jones did not submit any additional medical records. (*Id.* at 28.) On July 19, 2023, Lincoln upheld its original denial of Jones's STD benefits claim. (*Id.*

7

at 12.) In its letter, Lincoln described the entire claims process in detail as well as the medical records it received and considered in its decision. (*Id.* at 12-18.) To conclude, Lincoln wrote:

> In summary, we acknowledge that you may have experienced some symptoms associated with your condition and we express our condolence to you and your family. However, the information does not contain mental or physical exam findings, diagnostic test results, or other forms of medical documentation to verify that your symptoms were of such severity, frequency, and duration that they rendered you unable to perform the essential functions of your job as a Program Analyst.

(*Id.* at 15.)

Jones challenges Defendants' denial of his request for STD benefits as allowed under the Employee Retirement Income Security Act of 1974 ("ERISA"). Jones and Defendants have filed cross motions for summary judgment.

## DISCUSSION

Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Weitz Co. v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

This Court will consider the cross-motions drawing inferences against each movant as warranted. *See, e.g.*, *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

ERISA governs the benefit plan at issue here. Employee benefit plans under ERISA must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). Following such a review, a beneficiary of a plan governed by ERISA may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Id.* § 1132(a)(1)(B).

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When a plan gives

9

such discretionary authority, the Court reviews the decision to deny benefits for an abuse of discretion. *Waldoch v. Medtronic, Inc.*, 757 F.3d 822, 829 (8th Cir. 2014). Here, the Plan states that "[t]he Plan Administrator shall have complete control of the administration of the Plan, with all discretionary authority and powers allowed by law to interpret the Plan and to carry out its duties and discharge its responsibilities under the Plan." (Plan § 6.1.) This language clearly grants the Plan Administrator discretion, triggering the abuse-of-discretion standard.

Under the abuse-of-discretion standard, "the administrator's decision should be reversed 'only if it is arbitrary and capricious.'" *Green v. Union Sec. Ins. Co.*, 646 F.3d 1042, 1050 (8th Cir. 2011) (quoting *Midgett v. Wash. Grp. Int'l Long Term Disability Plan*, 561 F.3d 887, 896 (8th Cir. 2009)). "A court is not to substitute its own judgment for that of the plan administrator." *Alexander v. Trane Co.*, 453 F.3d 1027, 1031 (8th Cir. 2006). The question is whether the decision was supported by substantial evidence which means "more than a scintilla but less than a preponderance." *Waldoch*, 757 F.3d at 832 (quoting *Midgett*, 561 F.3d at 897). The Court "may consider both the quantity and quality of evidence before a plan administrator." *Wise v. Kind & Knox Gelatin, Inc.*, 429 F.3d 1188, 1190 (8th Cir. 2005). The question for the Court is whether "a reasonable person *could* have reached a similar decision, given the evidence before him, not [whether] a reasonable person *would* have reached that decision." *Prezioso v. Prudential Ins. Co. of Am.*, 748 F.3d 797, 805 (8th Cir. 2014) (quoting *Ferrari v. Teachers Ins. & Annuity Ass'n*, 278 F.3d 801, 807 (8th Cir. 2002)). Therefore, under the abuse-of-discretion standard, a court must carefully scrutinize the administrator's decision and

determine whether it was "extremely unreasonable, extraordinarily imprudent, or arbitrary and capricious." *Meyers v. Hartford Life & Accident Ins. Co.*, 489 F.3d 348, 351 (8th Cir. 2007).

Here, the parties dispute whether Lincoln abused its discretion in determining that Jones is not disabled as defined by the Plan. Jones argues that Lincoln erred because it ignored relevant and substantial evidence in the record, specifically claiming that Lincoln "disregarded the opinions of Plaintiff's treating therapist" and conducted a selective review of the evidence. (Doc. No. 40 at 6-7.) Defendants counter that Lincoln conducted an in-depth review of the evidence, including Jones's therapist's records and forms, and that it did not abuse its discretion. (Doc. No. 46 at 31-32.)

After carefully scrutinizing Lincoln's decision, the Court determines that a reasonable person *could* have reached this determination, therefore it was not arbitrary and capricious. Lincoln explained in its letter that while Jones's medical records showed that he suffered from anxiety, depression, atrial fibrillation, and sleep apnea—all serious conditions—the medical records did not show that any of these conditions had significantly worsened to prevent him from performing his job duties. Jones had been able to work with these conditions prior to the date of disability, so absent a change in his conditions, he would not be considered disabled under the Plan. *See, e.g.*, *Hickman v. LSI Corp.*, No. 11-cv-1039, 2012 WL 2505298, at *10 (D. Kan. June 28, 2012) ("The fact that there had been no significant change in her condition since she was actually working is relevant in determining the STD-Plan's criteria for receiving benefits (i.e. that she was incapable of working with her condition)."); *Collins v. Metro. Life Ins. Co.*,

11

477 F. Supp. 2d 274, 285 (D. Me. 2007) (finding denial of STD benefits was not arbitrary and capricious when "[plaintiff's] medical records do not indicate a significant change in her medical condition").

The only potential evidence of worsening conditions that Jones submitted were the forms provided by Terlouw. However, Terlouw's visit notes do not reflect that she thought Jones needed time off from work to recover from worsening anxiety or depression. She included one statement about Jones's symptoms worsening due to his mother's death, but the objective mental status examination results remained the same, Terlouw did not report any impaired functioning, and she did not recommend any change to Jones's treatment plan. Terlouw also referred to Jones's mental health conditions in her forms as "moderate" and "recurrent" and failed to provide detail about how Jones's functioning was now impaired by his mental health conditions. Although Jones's mother had died in the weeks before his date of disability, he had previously worked without issue and there is minimal evidence that this event caused a significant change in his conditions.[3] Much of Terlouw's records indicate that Jones's conditions remained the same and did not cause any new functional impairment. Anderson's records also indicate that Jones's conditions had not changed around the date of disability. Lincoln's denial is supported by substantial evidence in the record. A reasonable person could conclude from these records that Jones's conditions were still present but had not worsened.

---

[3] The Court extends its sympathy to Jones for the loss of his mother. It remains hopeful that he will continue to have the support of his friends and family.

Jones makes additional arguments including that Lincoln should have conducted an independent medical examination, Lincoln could not rely on reports created by their own nurse consultants, Lincoln should have given more weight to Terlouw's forms as Jones's treating physician, and Lincoln should have considered the impact of Jones's conditions together, rather than in isolation. (Doc. No. 40 at 8, 11-13.)

First, a plan administrator does not abuse their discretion by declining to order an independent medical examination when the "evidence supporting a disability claim is facially insufficient." *Rutledge v. Liberty Life Assura. Co. of Boston*, 481 F.3d 655, 661 (8th Cir. 2007). Here, much of the evidence Jones submitted supports the conclusion that his conditions did not change around his claimed date of disability. Therefore, Lincoln did not abuse its discretion by declining to order an independent medical examination.

Second, a plan administrator may rely on their own consultants and employees when considering claims. *Id.* ("[The Plan Administrator] was free to rely upon their regular consultants and employees in considering [Plaintiff's] claim for long-term disability benefits."). Doing so is not an abuse of discretion. Lincoln's reliance on its nurse consultants to ultimately deny Jones's claim is not an abuse of discretion.

Third, a plan administrator is not required to give special weight to the opinions of a claimant's treating physician. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Additionally, "[w]hen there is a conflict of opinion between a claimant's treating physicians and the plan administrator's reviewing physicians, the plan administrator has discretion to deny benefits unless the record does not support denial." *Johnson v. Metro. Life Ins. Co.*, 437 F.3d 809, 814 (8th Cir. 2006). Here, there was a

conflict between Terlouw's forms and the nurse consultants' reports. However, the record supported denial, so there is no abuse of discretion.

Lastly, Jones argues that Lincoln should have considered the total impact of his conditions together, rather than considering them in isolation. Jones does not further explain how Lincoln did this or how it impacted Lincoln's ultimate denial. He merely cites a few cases from Michigan, Tennessee, and New York. Although considering the total impact of a claimant's conditions could be important to determining disability status, this argument is not compelling here because Lincoln and its consultants conducted a very detailed review of Jones's records. Moreover, even if Jones had shown that his conditions were not considered in the aggregate, he failed to show any change in those conditions around his date of disability such that he would be considered disabled under the Plan.

In conclusion, Lincoln did not abuse its discretion when it denied Jones's claim for STD benefits. There is substantial evidence in the record to support a finding that Jones is not disabled under the Plan. There is no genuine dispute of material fact and Defendants are entitled to judgment as a matter of law.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Monty Jones's motion for summary judgment (Doc. No. [39]) is **DENIED**.

2. Defendants Lincoln National Life Insurance Company and Wells Fargo's motion for summary judgment (Doc. No. [35]) is **GRANTED**.

3. Plaintiff's claims against Lincoln National Life Insurance Company and Wells Fargo are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  November 20, 2024                     s/Donovan W. Frank
                                              DONOVAN W. FRANK
                                              United States District Judge